## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL WEST, | ) | 3:23-CV-01020 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HARTFORD, | ) | |
| *Defendant*. | ) | December 19, 2025 |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Paul West, who was formerly a lieutenant with the Hartford Police Department, alleges that Defendant City of Hartford discriminated against him on the basis of his race, color, disability, and sex; retaliated against him for his participation in protected activities; and intentionally inflicted emotional distress upon him in connection with, among other things, not selecting him for a promotion to the position of Captain.

Defendant seeks summary judgment on all of Plaintiff's claims, contending there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Plaintiff opposes the motion. For the reasons described below, the Court agrees with Defendant, and GRANTS its motion for summary judgment.

### I.    FACTUAL BACKGROUND

Unless otherwise noted, the parties agree on the following facts. Where facts are undisputed, the Court cites only to Plaintiff's Local Rule 56(a)2 Statement.

A.    Plaintiff's Employment with the Hartford Police Department

Plaintiff began his employment with the Hartford Police Department (the "Police Department") in 2002 and moved up the ranks over time, serving as a dispatcher, a police officer,

a sergeant, and, finally, a lieutenant.  Pl.'s Local Rule 56(a)2 St., ECF No. 71 ¶¶ 1, 2, 4,  6.  Plaintiff

has obtained significant secondary education, including bachelor's and master's degrees and

several certifications.  *See* Pl.'s Add'l Mat. Facts, ECF No. 71, ¶ 12; Pl.'s Dep. Tr., ECF No. 71-1

at 9–10.

In 2018, Plaintiff assisted a female colleague in the filing of a sexual harassment complaint.

ECF No. 71-1 at 44.  According to his complaint, Plaintiff provided testimony in a deposition

related to that matter on July 8, 2021.  Compl., ECF No. 1 ¶ 11*; see also* ECF No. 71-1 at 45–46.

In May of 2019, when Plaintiff was serving as a lieutenant, he suffered a brain injury.  ECF

No. 71 ¶ 7.  He subsequently spent approximately four years on a full-incapacity medical leave of

absence.  *Id.* ¶ 8.

According to Plaintiff, on or around October 1, 2021, Defendant's Human Resources and

Labor Relations department emailed Plaintiff a notice that Defendant "inten[ded] to remove

[Plaintiff] from administrative leave with pay status and that his personal accruals [would] be used

to cover his absences effectively September 29, 2020."  *See* ECF No. 1 ¶ 23; Pl.'s Add'l Mat. Facts

¶ 5.[1]  In his deposition, Plaintiff testified that he eventually was "taken off [administrative leave

status] for some time and they took my accruals and then I was placed back on," after he

successfully grieved the intent to remove him from administrative leave.  ECF No. 71-1 at 94.

B.  Promotional Process for Captain Position

On April 5, 2021, while Plaintiff was out on medical leave, the Police Department

announced a vacancy in a Captain position.  ECF No. 71 ¶ 9.  The announcement provided details

on salary, qualifications, and testing requirements, including a written examination scheduled for

---

[1] Neither party has provided this email as part of its summary judgment submission.

July 8, 2021, and an oral examination scheduled for July 29, 2021. *Id*. ¶ 10. For each of his prior promotions, Plaintiff had also sat for written and oral examinations. *Id*. ¶¶ 3, 5–6.

On April 6, 2021, an individual named Dustin Rendock sent an email to officers on a listserv encouraging them to apply for the Captain promotional examination. *Id.* ¶ 15. Plaintiff denies that he was included on this email. *Id.*; Pl.'s Add'l Mat. Facts ¶ 2. Nevertheless, Plaintiff submitted his application for the Captain position the same day. ECF No. 71 ¶ 16.

On May 27, 2021, Defendant's Principal Human Resources Analyst emailed Plaintiff to request that Plaintiff provide a note from his medical provider confirming he was medically cleared to take the promotional exam for the Captain position. *Id.* ¶ 17; Def.'s Ex. 5, ECF No. 68-1 at 62–63. After a follow-up request, Plaintiff provided the doctor's note on June 29, 2021. ECF No. 71 ¶¶ 19–20.

The promotional exam was administered by a third-party testing agency that had administered three of the four prior promotional examinations Plaintiff had taken at the Police Department. *Id.* ¶ 21. Plaintiff successfully completed the written portion of the examination on July 8, 2021, and was notified on July 20, 2021, that he would proceed to the oral examination phase. *Id.* ¶ 23. Plaintiff's deposition in the sexual harassment matter occurred the same week as the written exam. ECF No. 71-1 at 45–46.

Plaintiff took the oral examination on July 29, 2021. ECF No. 71 ¶ 27. The oral examination consisted of two parts: a scenario-based component, and an "in-basket" component involving simulation of real-life situations. *Id.* ¶¶ 24–26. Plaintiff was notified of his examination results on August 24, 2021. *Id.* ¶ 28. Plaintiff received a final score of 5.8000 on the oral scenario exercise, with the lowest score among candidates being 5.8000 and the highest 6.2800. *Id.* ¶ 30.

Plaintiff received a score of 5.0600 on the in-basket exercise, with the lowest score being 2.9000 and the highest 5.1200. *Id.* ¶ 31.

All examinees were informed they would be afforded the opportunity to review the recordings of their oral examination and, if they believed the assessors made a significant error in scoring, to request a secondary review of their results. Def's Ex. 8, ECF No. 68-1 at 69. Plaintiff requested and was granted a secondary review of his examination results. ECF No. 71 ¶¶ 34–35. Plaintiff's score did not change after the secondary review. ECF No. 68-1 at 78–79.

Plaintiff also sought additional information regarding his examination results, including the individual scores assigned by assessors, the demographic composition of the assessor panel, and whether assessors had access to candidates' written examination scores. ECF No. 71 ¶ 36; ECF No. 71-1 at 76; Def.'s Ex. 10, ECF No. 68-1 at 83. Defendant in turn informed Plaintiff that no individual scores were assigned; that the score was determined through panel consensus after deliberation; and that the assessors were not provided with access to candidates' written exam scores. ECF No. 71 ¶¶ 37, 39. Defendant did not provide Plaintiff with information about the racial composition of the panel, asserting that it did not have access to such information, nor did the testing agency collect it. ECF No. 68-1 at 81–83; Pl.'s Add'l Mat. Facts ¶ 3.

Under the Police Department's policy, candidates are ranked according to their examination scores. ECF No. 71 ¶ 32. The names of the highest-scoring candidates were submitted to the Police Chief for interviews. *Id.* ¶ 33; *see also* Pl's Dep. Tr. at 80–81. Plaintiff was not among the candidates selected for an interview and, ultimately, was not selected for the open Captain position. *See* ECF No. 71 ¶ 41. Plaintiff contends that no Black males were among the candidates selected for interviews or the Captain position. ECF No. 71 ¶ 42; Pl.'s Add'l Mat. Facts ¶ 4; ECF No. 1 ¶ 5. Plaintiff further states that for more than twenty years, no Black male

has been promoted to Captain in the Police Department.  Pl.'s Add'l Mat. Facts ¶ 1.  Defendant, for its part, states that Jason Lee, one of the candidates selected for an interview and ultimately awarded a Captain position, is a Black male.  ECF No. 71 ¶ 42.

C.  The Present Action

Plaintiff's complaint, which he filed *pro se* in June of 2023, alleges six counts.  Five are explicitly listed: one count each for race and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; one count of disability discrimination; one count of retaliation under Title VII; and one count of intentional infliction of emotional distress under state law.[2]  ECF No. 1 at 8–12.  In his complaint, Plaintiff also refers to discrimination on the basis of sex; the Court thus liberally interprets the complaint to allege one count of sex-based discrimination under Title VII, for a total of six counts.  *See id.* ¶¶ 8, 24.  Counsel first appeared on behalf of Plaintiff in May of 2024, *see* Not. of Appearance, ECF No. 35, and he has been represented since.  *See* Not. of Appearance, ECF No. 43.

Following discovery, Defendant filed the instant motion for summary judgment, Mot. Summ. J., ECF No. 67, which Plaintiff opposes, Pl.'s Opp. Br., ECF No. 72.  At oral argument, Defendant noted that Plaintiff propounded only limited discovery on Defendant and did not take any depositions during the course of this litigation.  Tr., ECF No. 79 at 6.

---

[2] The Court construes Plaintiff's race and color discrimination and retaliation claims as being brought only under Title VII, given that Plaintiff explicitly invokes Title VII in these counts and his briefing discusses only Title VII.  *See* ECF No. 1 at 8–12 (referencing Title VII for Plaintiff's race, color, and retaliation claims); Pl.'s Opp. Br., ECF No. 72 at 8–11.  The Court recognizes that the complaint references the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*, in passing in its preliminary statement, but does not consider that offhand reference sufficient to have raised race and color discrimination or retaliation claims under the CFEPA, given the explicit invocation of Title VII in those counts.  Moreover, any CFEPA claim for race or color discrimination or retaliation has been abandoned, as Plaintiff did not argue that he is advancing such claims in his briefing (which was filed by counsel).  *See Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017).  With respect to Plaintiff's disability discrimination claim, his complaint does not invoke either the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), or the CFEPA specifically.  Accordingly, interpreting the complaint liberally because it was filed while Plaintiff was proceeding *pro se*, the Court analyzes whether Plaintiff is entitled to relief for disability discrimination under both the CFEPA and the ADA.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A disputed fact is material only where the determination of the fact might "affect the outcome of the [law]suit." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy its burden of establishing there is no genuine issue of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc*., 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp*., 477 U.S. at 324) (alterations in original).  The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 248–49.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with

respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    DISCUSSION

### A.    Race, Color, Gender, and Disability Discrimination

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of a person's race, color or sex. 42 U.S.C. § 2000e-2(a)(1). The ADA and CFEPA further prohibit discrimination on the basis of disability. 42 U.S.C. § 12112; Conn. Gen. Stat. § 46a-60. All of Plaintiff's claims, apart from his claim for intentional infliction of emotional distress, are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir.), *cert. denied sub nom. The Golub Corp. v. Elaine Bart*, 145 S. Ct. 173 (2024) (applying *McDonnell Douglas* framework to disparate treatment claims under Title VII); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (applying *McDonnell Douglas* framework to Title VII retaliation claims); *Green v. Cellco P'ship*, 218 F. Supp. 3d 157, 162 (D. Conn. 2016) (applying *McDonnell Douglas* framework to ADA and CFEPA claims).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination or retaliation. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The plaintiff's burden at this step is "not onerous." *Id.* at 253. A plaintiff may establish the *prima facie*

case of discrimination by showing that "'(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d. Cir. 2023) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). If the plaintiff satisfies his *prima facie* case, a presumption arises that the adverse employment action was based on the consideration of impermissible factors, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged conduct. *Id.* If the defendant articulates a legitimate, non-discriminatory reason for its action, the presumption generated by the *prima facie* case falls away, and the burden shifts back to the plaintiff to show discrimination or retaliation. *Id.* at 270–71; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Zann Kwan*, 737 F.3d at 845.

At step three, the plaintiff "may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart*, 96 F.4th at 576. With respect to retaliation claims, the plaintiff must demonstrate that retaliation was a "but-for" cause of the adverse action, meaning that the adverse action would not have occurred in the absence of the retaliatory motive. *Zann Kwan*, 737 F.3d at 845–46. The third step of the *McDonnell Douglas* framework requires the Court to examine the entire record—including evidence from the plaintiff's prima facie case, additional evidence suggesting pretext, and other evidence of the defendant's discriminatory or retaliatory intent—and "determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated'" against him. *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at 143); *see also Burdine*,

450 U.S. at 256 (explaining that the plaintiff's third-step burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination"). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors," including the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false," and any other properly considered evidence that supports the employer's case. *Reeves*, 530 U.S. at 148–49.

### 1. Step One: Plaintiff's Prima Facie Case

First, the Court concludes that Plaintiff has demonstrated a *prima facie* case of discrimination on the basis of his race and color, but not on the basis of sex or disability.

To start, Defendant does not contest that Plaintiff has demonstrated the first two elements of his *prima facie* case: that he is a member of protected classes—as a Black, disabled[3] man—and that he was qualified for the position of Captain. *See* 42 U.S.C. § 2000e-2(a)(1) (enumerating race as a protected class under Title VII); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of…sex' protects men as well as women"); *Worster v. Carlson Wagon Lit Travel, Inc.*, 353 F. Supp. 2d 257, 265 (D. Conn. 2005) (disabled individuals are within the class of persons protected by the ADA). Rather, Defendant contends that Plaintiff has not suffered an adverse employment action, and that even if he did, the circumstances do not give rise to an inference of discrimination.

For the reasons explained below, the Court concludes that Plaintiff has demonstrated at least two adverse employment actions. But the evidence in the record supports an inference of

---

[3] For purposes of its summary judgment motion, Defendant assumes Plaintiff has a "disability" as defined by the ADA and CFEPA. *See* ECF No. 67-1 at 11, n.14. The Court does the same, without deciding the issue. Additionally, Defendant does not dispute that the Police Department has more than fifteen employees and is therefore an "employer" subject to the ADA. *See* 42 USC § 12111(5)(A).

discrimination only on the basis of Plaintiff's race and color with respect to Defendant's failure to promote him to Captain, and not otherwise.

### a. Adverse Employment Actions

First, only two of Plaintiff's three asserted adverse actions actually qualify as such. Plaintiff asserts three adverse actions: first, that Defendant required him to provide a doctor's note to sit for the Captain exam; second, that Defendant notified him he would be removed from paid leave status, and later temporarily removed him; and third, that Defendant did not promote him to the role of Captain.[4]  ECF No. 1 ¶¶ 7, 23–24; ECF No. 71-1 at 81, 94-95; ECF No. 71 ¶¶ 17, 41. The Court concludes that the failure to promote Plaintiff to the role of Captain and the temporary removal from paid administrative leave rise to the level of adverse employment actions, but the request for medical clearance is not an adverse employment action under Title VII.

Adverse employment actions are "practices that 'treat[ ] a person worse'" with respect to "an identifiable term or condition of employment" because of a protected trait.  *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024) (quoting *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020)).  Failure to promote is a quintessential example of potentially discriminatory conduct.  *See, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  Thus, Plaintiff's allegation that Defendant failed to promote him to the position of Captain qualifies as adverse action for purposes of his *prima facie* showing.

---

[4] Plaintiff's complaint and briefing in opposition to summary judgment also assert that Defendant discriminated against him by failing to notify him by email of the job opening for the Captain position. Pl's. LR 56(a)2 St. ¶ 15; ECF No. 1 ¶ 5; ECF No. 72 at 1, 11–12.  Defendant maintains that Plaintiff was included on the listserv that received email notification of the job opening.  *See* ECF No. 67 at 3; Def's. Ex. 3, ECF No. 68-1 at 56 (Promotional Job Announcement email, sent on April 6, 2021, at 12:15 p.m).   Neither party has offered corroborating evidence supporting its version of events.  But the parties agree that, in any event, Plaintiff applied for the Captain position on the same day the notification was sent to the listserv.  And at oral argument, Plaintiff's counsel conceded that Defendant's failure to include Plaintiff on the email notification—if such exclusion even occurred—would not rise to the level of an adverse employment action.  ECF No. 79 at 20.

Whether a temporary change in employment status—here, from leave with pay status to leave without pay status—can provide a basis for a claim of discrimination is a closer question, but the Court finds that Plaintiff's temporary removal from paid status is sufficient.[5]  Courts in this Circuit have taken a fact-specific approach to analyzing short-term changes to conditions of employment.  *Compare Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) (noting a temporary reduction in salary is an adverse employment action) *with Brady v. Wal-Mart Stores, Inc.,* 455 F. Supp. 2d 157, 170 (E.D.N.Y. 2006), *aff'd,* 531 F.3d 127 (2d Cir. 2008) (recognizing that temporary or "[m]ediate' actions…even if constituting an adverse employment action, may not lead to legally cognizable harm if by some subsequent action on the part of the employer, the employee is restored to his or her previous status").  Where a plaintiff has been temporarily deprived of pay—as opposed to a less-critical term of employment, such as job duties—courts often find an adverse action.  *See, e.g.*,  *Martel v. New England Home Care, Inc.,* No. 3:09-CV-1412 (DJS), 2014 WL 3687738, at *8 (D. Conn. July 22, 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 72–73 (2006)).  Thus, the Court finds that Plaintiff's temporary removal from paid status is an adverse action for purposes of Plaintiff's *prima facie* showing.

On the other hand, the requirement that Plaintiff provide medical clearance to sit for the Captain examination does not rise to the level of an adverse action.  To be sure, a plaintiff need not show that the harm incurred was "significant…[o]r serious, or substantial," or that it "must exceed a heightened bar."  *Muldrow*, 601 U.S. at 355.  But there is a distinction between a low bar and no bar at all.  Where the challenged action is not harmful to the plaintiff—not "adverse"—

---

[5] In their briefing, the parties had focused on whether there was a "threat" to remove Plaintiff from leave with pay status, rather than an actual removal of him from that status.  At oral argument, based on a question from the Court on this issue,  the parties clarified that Plaintiff was, in fact, removed from leave with pay status temporarily.  ECF No. 79 at 20.  Thus, the Court focuses on the actual removal, rather the "threat" or notice of removal.

there is no adverse employment action for the purposes of a discrimination claim. *See, e.g.*, *Mitchell v. Planned Parenthood of Greater New York, Inc.,* 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) ("[E]ven under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions.").  Plaintiff has not articulated any identifiable harm stemming from the medical clearance requirement.  Further, it is well-established in this Circuit that an employer's request for medical documentation related to medical leave is not an adverse action.  *See Wagner v. Cnty. of Nassau*, No. 11-CV-1613 (JS) (ARL), 2014 WL 3489747, at *9 (E.D.N.Y. July 11, 2014) ("[r]equiring doctors' notes to return from sick leave is not an adverse employment action"); *Evarts v. Quinnipiac Univ.*, No. 3:15-CV-1509 (CSH), 2018 WL 4845743, at *20 (D. Conn. Oct. 4, 2018) ("Within this Circuit, an employer's requirement that an employee provide medical documentation of the state of his condition is not viewed as an 'adverse employment action.'"); *Blake v. Potter*, No. 03-CV-7733 (LAP), 2007 WL 2815637, at *6 (S.D.N.Y. Sept. 25, 2007), *aff'd*, 330 F. App'x 232 (2d Cir. 2009).  Thus, the Court concludes that Defendant's request for a medical note before allowing Plaintiff to take the Captain examination does not qualify as an adverse action.

### b.   Inference of Discrimination

Next, the Court examines whether, as to the two adverse actions Plaintiff has demonstrated, he has provided the minimal evidence required for an inference of discrimination on any ground. It holds that he has done so only with respect to his race and color discrimination claims, related to failure to promote him to the Captain position.

For race and color discrimination claims, a plaintiff can raise an inference of discrimination by showing that the position was filled by a person outside the protected class.  *See, e.g.*, *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 521 (S.D.N.Y. 2009) (finding that a plaintiff satisfied *prima facie* case of discriminatory failure to promote on grounds of race, national origin, and age

by showing that his employer filled jobs, for which he was applied and was qualified, with people who were not part of the protected classes of which he was a member). Concerning his claims for race and color discrimination, Plaintiff states that no Black male had been promoted to the rank of Captain in the Police Department for more than twenty years. Pl.'s Add'l Mat. Facts ¶ 1. He also states that he was the only Black male who was qualified to sit for the Captain examination in 2021, and that no one who was promoted to Captain after the 2021 examination was a Black male. *Id.*; ECF No. 1 ¶ 4; ECF No. 71-1 at 56, 109. Defendant counters that Jason Lee, who sat for the 2021 examination with Plaintiff and ultimately was promoted to Captain, is a Black male. Def.'s LR 56(a)1 St. ¶ 42. Plaintiff maintains that Mr. Lee is not Black, ECF No. 71 ¶ 42; Pl.'s Add'l Mat. Facts ¶ 4, and in his deposition, Plaintiff suggested Mr. Lee has a light complexion, ECF No. 71-1 at 109–110.

Viewing the evidence in the light most favorable to Plaintiff (in this instance, taking Plaintiff at his word), Plaintiff has made the minimal *prima facie* showing that Defendant hired someone who is not part of his protected racial and color class, based on his personal assessment that Mr. Lee is not Black.[6] Whether two candidates for a job belong to different races is a question for the trier of fact. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 609–09 (2d Cir. 2016).

But Plaintiff has not provided any evidence with respect to the failure to promote him to Captain that gives rise to an inference of discrimination on the basis of his sex or disability status. It appears undisputed that Mr. Lee, like Plaintiff, is a man, and there is no evidence in the record that Mr. Lee is non-disabled. Thus, Plaintiff satisfies his *prima facie* burden with respect to the

---

[6] The parties have not distinguished between discrimination on the basis of *race* and discrimination on the basis of *color* in their briefing. As neither party contends they are analyzed differently, the Court considers these claims together.

adverse action of failure to promote only with respect to his claims for race and color discrimination.

With respect to Plaintiff's temporary removal from leave with pay status, Plaintiff has provided no evidence suggestive of discrimination on the basis of any of his protected classes or his disability.  In October 2021, Plaintiff received a notice that he may be removed from paid status, and at some point while he was still on medical leave, he was in fact temporarily removed.  *See* Pl.'s Add'l Mat. Facts, ¶¶ 5, 7; ECF No. 71-1 at 94.  Neither party has presented the Court with the full text of the emailed notice Plaintiff received on October 1, 2021, and Plaintiff provided only a portion of the notice within complaint.  *See* ECF No. 1 ¶ 23 ("The letter concluded: '*Accordingly, the city is calculating whether your accrual balance will cover the repayment of the administrative with pay you have been provided to date*…'").  The Court is not privy to any portion of the notice other than its conclusion (although the use of the word "accordingly" suggests a rationale was offered for the contemplated change).  The notice, and Plaintiff's subsequent removal from paid status, are facially neutral, and an employer's facially neutral action "'should itself raise no inference of discriminatory conduct.'"  *Brown v. City of New York*, No. 16-CV-1106 (NG), 2017 WL 1102677, at *6 (E.D.N.Y. Mar. 23, 2017) (quoting *Watson v. Fort Worth Bank & Tr*., 487 U.S. 977, 990 (1988)).  And here, the Court has nothing beyond the facially neutral email snippet from which to infer discrimination on any basis.  No evidence has been presented relating to this notice, the removal from administrative pay, or the actions of the officials behind the decision that suggests race, color, gender, or disability discrimination was at play.  Nor is there any indication that Plaintiff was treated differently than otherwise similarly-situated employees with respect to his paid administrative leave.

Further, even if the requirement that Plaintiff provide medical clearance to sit for the Captain exam *did* constitute an adverse employment action, Plaintiff would have similarly failed to demonstrate that it "took place under circumstances giving rise to an inference of discrimination" on the basis of his race, color, or sex. *See Davis v. N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). "A plaintiff must assert more than conclusory statements, conjecture, or speculation to defeat summary judgment." *Vasquez v. Claire's Accessories, Inc.,* 392 F. Supp. 2d 342, 349 (D. Conn. 2005); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also, e.g., Morales v. Bottling Grp., LLC*, 374 F. Supp. 3d 257, 272 (W.D.N.Y. 2019) (finding no inference of racial motive where Plaintiff relied "only on his speculative self-belief that the … allegations … were motivated because of his membership in a protected class"), *aff'd sub nom. Campbell v. Bottling Grp., LLC*, 814 F. App'x 630 (2d Cir. 2020).

Apart from his own conclusory testimony that he was required to produce a doctor's note simply because he was the only Black man who had a disability at the time, *see* ECF No. 71-1 at 42, Plaintiff offers only the declaration of Tracy Green—who is a white female—to suggest that the medical clearance requirement was applied inconsistently across racial groups and sex. Pl.'s Ex. B, ECF No. 71-2, at 1. Ms. Green avers that she was not required to provide medical clearance to sit for a police promotional exam even though she, like Plaintiff, was on workers' compensation leave and "fully incapacitated" as to her regular police duties at the time of the exam. *See id.* But Ms. Green is a poor comparator. First, and importantly, Ms. Green's disability was not a traumatic brain injury, but an injury to her dominant hand, which the Police Department accommodated by allowing her to provide her answers orally, with transcription assistance. *See id.* at 2. Given the relative severity of Plaintiff's injury compared to Ms. Green's, the Court is hard-pressed to find that she is similarly situated to him with respect to the need for medical clearance before taking a

promotional examination. And, in any event, Ms. Green and Plaintiff took different promotional examinations: Ms. Green for the rank of Sergeant, and Plaintiff for the rank of Captain. *See id.* Plaintiff has not provided evidence to suggest that the examinations tested similar skills and thus similarly justified medical clearance. Thus, although Ms. Green happens to be a white female and was not required to provide a doctor's note before taking a promotional exam, her declaration is a plainly insufficient basis from which to infer that Plaintiff was discriminated against on the basis of his race, color, or sex with respect to that requirement. Plaintiff's claims that the medical note requirement was discriminatory in these manners are thus not supported by anything more than Plaintiff's circular references to his own beliefs.

Plaintiff further fails to show facts giving rise to an inference of disability discrimination with respect to the requirement for medical clearance (again assuming it qualifies as an adverse action). Once again, Plaintiff has offered no evidence supporting an inference of discrimination other than his own self-belief that he was treated differently on account of his disability. Plaintiff's argument that Ms. Green's affidavit supports this claim relies on the idea that she was not "disabled" as a matter of law on account of her hand injury. The Court lacks any basis on which to draw this conclusion. And there is nothing else in the record to indicate that the clearance requirement was applied to Plaintiff and not to other non-disabled, but otherwise similarly-situated officers on medical leave who were eligible to sit for promotional exams. To the extent Plaintiff attempts to rely on what he perceived as derogatory statements from then Police Chief Jason Thody about Plaintiff's intellect, the Court lacks any basis from which to infer a nexus between any such comments and the medical clearance requirement. *See Morris v. New York City Dep't of Sanitation*, No. 99-CV-4376 (WK), 2003 WL 1739009, at *6 (S.D.N.Y. Apr. 2, 2003) ("[S]tray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of

personnel actions, will not defeat the employer's motion for summary judgment"). Indeed, there is no evidence to suggest that Chief Thody had anything to do with requiring Plaintiff to submit a medical note before taking the exam.

For these reasons, the Court concludes that Plaintiff has sufficiently demonstrated a *prima facie* case solely for race and color discrimination, on the basis of his failure to be promoted to the position of Captain. The Court thus proceeds to the next step of the *McDonnell Douglas* analysis.

### 2. *Step Two: Legitimate, Non-Discriminatory Justification*

At step two, Defendant has the burden of "'articulat[ing] some legitimate, nondiscriminatory reason' for the disparate treatment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 802). The reason provided must be both "clear and specific." *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985). The Court concludes Defendant has met its burden at this stage.

Defendant has offered a non-discriminatory justification for its decision not to promote Plaintiff: his performance on the promotional exam. *See, e.g., Payne v. Connecticut Dep't of Transp.*, 267 F. Supp. 2d 207, 211 (D. Conn. 2003) (employer met its burden in part by asserting that employee "did not score well in his interview"). The Captain promotional examination was administered by a third-party testing agency. *See* ECF No. 71 ¶ 29. Plaintiff's score on the oral portion of the examination was the lowest among the candidates and below average, while his score on the "in-basket" exercise was better than average, and closer to the top score among the candidates. ECF No. 71 ¶¶ 30–31. All candidates who took the exam were ranked based on their total score. *See* ECF No. 71 ¶ 32. Plaintiff's total exam score placed him sixth among the candidates, too low in the rankings for his name to be submitted to the Police Chief of police for an interview. *See* ECF No. 71 ¶ 41. This is an objective, non-discriminatory justification for

17

Defendant's failure to promote Plaintiff. Thus, the Court proceeds with step three of the analysis on that claim, for race and color discrimination only.[7]

### 3. *Step Three: Pretext or Other Proof of Discrimination*

Plaintiff has not adduced sufficient evidence to survive summary judgment on his claims for race and color discrimination for failure to promote. "To satisfy the third-stage burden under *McDonnell Douglas* and survive summary judgment in a Title VII disparate treatment case, a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart*, 96 F.4th at 576. Such evidence must be admissible and more than "conclusory supposition." *Jimenez*, 605 F. Supp. 2d at 497. Once an employer has offered a qualification-based non-discriminatory reason for its choice in hiring, "the employee must proffer evidence that his credentials were so superior to the person hired that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Wood v. New York City Transit Auth.,* 699 F. App'x 76, 77 (2d Cir. 2017) (quoting *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001), *superseded in part by rule as recognized by Mazzei v. Money Store,* 656 F. App'x 558, 559 (2d Cir. 2016)).

---

[7] Although the Court has concluded that Plaintiff has not demonstrated a *prima facie* case of discrimination regarding his temporary removal from leave with pay status and the requirement for a medical clearance before taking the exam—and thus the Court need not proceed further with the analysis on those issues—it notes that, in any event, step two would be satisfied as to both issues. Defendant has proffered that it required the doctor's note because Plaintiff has been on full incapacity medical leave and out of work for nearly two years due to an asserted work-related brain injury. The requirement was reasonable to ensure Plaintiff was physically capable of participating in the testing process. And at oral argument, Defendant stated that the temporary removal from leave with pay status was related to an ongoing dispute concerning Plaintiff's entitlement to workers' compensation he received while on leave. *See* ECF No. 79 at 5–6. While the Court would not ordinarily consider arguments raised for the first time at oral argument, Plaintiff did not assert that he was actually removed from leave with pay status in his briefing. This issue first came to light upon the Court's questioning of counsel at oral argument, as the Court had carefully reviewed Plaintiff's deposition testimony stating that he was, in fact, removed from that status for a period of time. Thus, in an exercise of its discretion, the Court considers Defendant's response at oral argument as satisfying its burden at step two. And as discussed below, Plaintiff's arguments on these issues also fail at step three.

Although Plaintiff offers evidence of his educational background, he has not offered evidence to demonstrate that his qualifications were so superior to those of Mr. Lee that no reasonable person could have chosen Mr. Lee over him for the promotion.

Instead, Plaintiff makes several arguments suggesting that Defendant's explanation is not credible, but those arguments are not supported by the facts in the record. Specifically, Plaintiff argues that the Captain examination process was not neutral, including because Plaintiff did not receive accommodations for his brain injury; was not given information about the demographic makeup of the panel of assessors; and was subject to a medical clearance requirement—which he claims diverted his attention from exam preparation to medical appointments and paperwork, disadvantaging him as compared to the other candidates. ECF No. 72 at 17. But Plaintiff has not provided any medical evidence suggesting what, if any, accommodations would have been appropriate, nor that he requested any accommodations before taking the examination. There is no evidence beyond speculation to support the idea that Defendant intentionally withheld information about the panel's demographics or that the panel was biased. And the Court cannot properly assume, without any information about the efforts Plaintiff had to undertake to receive medical clearance, that the doctor's note requirement was so onerous it had a material impact on Plaintiff's exam preparations. Indeed, Plaintiff successfully completed the written portion of the examination shortly after submitting the note, and had one month between submission of the note and the oral examination—ample time to prepare. As discussed above with respect to the inference of discrimination in the *prima facie* case, Plaintiff has not offered any evidence tending to prove discrimination beyond his own opinion that Defendants discriminated against him based on his race and color with respect to the Captain promotion.

Nor is there sufficient evidence of discrimination on any basis to overcome summary judgment related to Plaintiff's temporary removal from leave with pay status or the medical clearance requirement, assuming it were to qualify as an adverse action. As to the temporary removal from leave with pay, Plaintiff has put forth no evidence concerning who made that decision, and he has offered only speculation as to why it was made. On this record, no reasonable jury could conclude that he was discriminated against on any basis with regard to that decision. And finally, as to the medical clearance requirement, there is likewise insufficient evidence in the record from which a jury could conclude that Defendant required the doctor's note for a discriminatory reason, as opposed to a genuine interest in ensuring that an employee who had been out of work for two years on full incapacity medical leave with a brain injury was physically capable of taking the examination.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination claims.

B. <u>Retaliation</u>

Plaintiff's Title VII retaliation claim likewise cannot survive summary judgment.

Title VII makes it unlawful to retaliate against an employee because he has opposed any unlawful employment practice or because he has "made a charge, testified, assisted, or participated in any manner" in an investigation or proceeding concerning an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "Like discrimination claims, retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework." *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)). To demonstrate a *prima facie* case of retaliation, Plaintiff must first show "(1) he engaged in [protected activity], (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse

action and the protected activity." *Treglia*, 313 F.3d at 719. A causal connection may be established directly or indirectly. *See Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 323 (D. Conn. 2016). "Indirect evidence can be established by demonstrating that the 'protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of [others similarly situated] who engaged in similar conduct.'" *Zuro v. Town of Darien*, 432 F. Supp. 3d 116, 127 (D. Conn. 2020) (alteration in original) (quoting *Genn*, 219 F. Supp. at 323). As in the discrimination context, if a plaintiff successfully establishes a *prima facie* case, the defendant must offer a non-retaliatory reason for its challenged actions. *Treglia*, 313 F.3d at 721. If a defendant meets this burden, the plaintiff must point to evidence sufficient to permit a rational factfinder to conclude that the employer's explanation is pretext or that the employer otherwise had an impermissible retaliatory motive. *See Zann Kwan*, 737 F.3d at 846 (noting that a plaintiff can also prove that retaliation was "a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action").

### 1. Step One: Plaintiff's Prima Facie Case

#### a. Protected Activity and Employer Knowledge

In his briefing, Plaintiff asserts that he engaged in two protected activities for which he faced retaliation. First, he assisted with the filing of another employee's Title VII sexual harassment complaint in 2018. ECF No. 71-1 at 44; *see Deravin v. Kerik*, 335 F.3d 195, 203–04 (2d Cir. 2003) (recognizing any actual participation in a Title VII proceeding or investigation constitutes protected activity). The record is somewhat unclear as to whether Defendant knew that Plaintiff had assisted the other employee in this manner, though Defendant does not contest that it knew.

Second, in 2021, Plaintiff requested a second review of his Captain exam results and requested more information about the demographics of the panel of assessors who scored the exam. ECF No. 68-1 at 76–79; 81–84. He also asked for information about "who in the City of Hartford is responsible for compliance" with Connecticut Gen. Stat. 7-291a, a statute concerning law enforcement efforts to recruit, retain, and promote minority police officers in communities with a relatively high concentration of minority residents. *Id.* at 83. As these requests were directed to Defendant's Human Resources department, Defendant was clearly on notice of them. *See id.* (Plaintiff's request to HR for more information about the panel of assessors for the Captain examination).

While Plaintiff's assistance with his colleague's harassment complaint is protected activity, *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2d Cir. 2005) (voluntarily supporting a co-worker's Title VII suit is protected activity), the Court cannot arrive at the same conclusion regarding Plaintiff's request for more information following the Captain exam. A plaintiff engages in protected activity when he "(1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Jacobs v. Hudson Valley Family Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024). "Protected activities can also include 'informal protests of discriminatory employment practices, including making complaints to management' provided that they are 'sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.'" *Id.* (citations omitted).

But a request for information and a second review of examination results does not necessarily rise to the level of a complaint that discrimination is afoot; while Plaintiff may have been trying to gather information to support such a claim, the gathering of information is a

predicate step toward making a complaint, not a complaint itself.  Rather, the evidence suggests that Plaintiff was merely taking advantage of the established process for a secondary review of exam results and requesting information to determine whether there was a *chance* he faced discrimination.  Although Plaintiff suggested to Defendant that he was seeking the assessors' demographic information "to avoid implications of bias, disparate treatment, or manipulation," ECF No. 68-1 at 83, these statements are not sufficiently clear to have suggested to Defendant that Plaintiff was actually complaining of discrimination.  Indeed, as reflected in Plaintiff's own statements, he was simply searching for information.  *See* ECF No. 71 ¶ 38 (Plaintiff stated that requesting information was "a tool to find out" whether assessors were discriminating against him).  Plaintiff asserts, without citation, that his "inquiries regarding the fairness of the process were protected activity."  ECF No. 72 at 19.  Although Defendant does not respond to this contention in its reply, Plaintiff's failure to cite any authority to support his proposition is telling. The Court's independent research likewise has not revealed any binding authority suggesting that an inquiry for information that might later lend support to a discrimination complaint rises to the level of a protected activity covered by Title VII's retaliation provision.  Based on the record before it, the Court cannot find that Plaintiff engaged in protected activity in the aftermath of the Captain exam.  Thus, the only protected activity the Court will consider is Plaintiff's involvement in his colleague's sexual harassment lawsuit.

### b.  Adverse Employment Actions

Plaintiff claims two adverse employment actions relating to his discrimination claim:  the medical clearance requirement and the notice of potential removal (followed by actual removal)

from administrative pay status.[8]   Only the latter is legally sufficient to support a claim for retaliation.

"[A] retaliation plaintiff [must] show that the challenged action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"   *Burlington Northern*, 548 U.S. at 54  (internal quotation and citation omitted).   A reasonable worker may be dissuaded from engaging protected activity to avoid even the *notification* that his pay may be taken away—and certainly to avoid an actual reduction (or complete cessation) of pay, even on a temporary basis.   *See Vega,* 801 F.3d at 91 (finding that the wrongful deduction of $738.92 from an employee's paycheck for sick leave and his employer's failure to even partially correct it for six months "surely could have had an adverse impact" on the employee); *Lee v. Saul*, No. 19-CV-6553 (PGG) (SN), 2020 WL 7029264, at *6–7 (S.D.N.Y. Aug. 31, 2020), *report and recommendation adopted as modified*, 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020) (finding that a "threatened demotion" constituted an adverse employment action because it was "likely to deter" the employee from filing a formal complaint).   Further, the notification that Plaintiff might lose his pay was followed, in this case, by an actual (albeit temporary) loss of leave with pay status.   Thus, Plaintiff has demonstrated that he suffered an adverse action with respect to temporary removal from leave with pay status.

On the other hand, the medical clearance requirement is not an adverse action.   Plaintiff has set forth no evidence or arguments supporting the notion that being required to get a doctor's note would dissuade a reasonable worker from making or supporting a discrimination claim.   And

---

[8] Plaintiff also asserts that the fact that he was scheduled for a deposition in the sexual harassment matter around the same time as the Captain examination was retaliatory.   However, there is evidence in the record that the scheduling of Plaintiff's deposition in the harassment matter was partially the result of his own counsel's schedule.   ECF No. 71-1 at 86-87; *see also id.* at 107-08 (when asked whether he believed the depositions were scheduled to interfere with the Captain examination, Plaintiff stated "I don't know the intent of the scheduling behind the deposition").   Where an action is taken by a third party rather than the employer, it cannot fairly be considered an "employment action," much less an adverse one. Thus, the Court will not analyze this as an adverse employment action.

courts in this Circuit do not consider such requirements to be legally sufficient. *See, e.g.*, *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS), 2020 WL 2489774, at *12 (E.D.N.Y. May 14, 2020) (quoting *Wagner*, 2014 WL 3489747, at *9 ("Requiring a doctor's note to return from medical leave 'is not an adverse employment action, even under the more lenient standard applicable to retaliation claims'")); *Reckard v. Cnty. of Westchester,* 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004) (requiring updated medical documentation is not an adverse employment action for purposes of retaliation).

### c.  Causation

The final element of the *prima facie* case is a showing of "but-for" causation, such that the adverse action would not have occurred in the absence of the retaliatory motive. *Zann Kwan*, 737 F.3d at 845–46.  Proof of a causal connection can be established indirectly "by showing that the protected activity was followed closely by discriminatory treatment … or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct," or directly, through evidence of retaliatory animus. *DeCintio v. Westchester Cnty. Med. Ctr.,* 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted).  With respect to temporal proximity, a period of three weeks is sufficiently short to support a causal inference, *see Zann Kwan*, 737 F.3d at 846, whereas a period of even three months may be too long, under the circumstances. *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020).  At least one court has concluded that three years between the protected activity and the adverse action is too long to show a causal connection. *See Lynk v. Henderson,* No. 98-CIV-2086 (MGC), 2000 WL 178859, at *4 (S.D.N.Y. Feb. 15, 2000).

Here, Plaintiff's assistance with the sexual harassment complaint in 2018 is too remote in time to be causally connected to the change in his pay status, which occurred three years later, in October of 2021 (or the medical clearance requirement, which occurred just a few months earlier,

in June of 2021).  *See* ECF No. 71-1 at 44.  Plaintiff argues that the Court can infer causation

because the promotional process was "simply … the next opportunity to retaliate" against him,

ECF No. 72 at 18, but he offers no facts or evidence in support of that contention.  In the absence

of any information suggesting a connection between his 2021 temporary removal from leave with

pay status to the 2018 assistance with a colleague's complaint, the Court cannot take the logical

leap to conclude that Defendant retaliated against Plaintiff in the manner he suggests.[9]

Thus, Plaintiff has not made out a *prima facie* case for retaliation.

## 2.  *Step Two: Legitimate, Non-Retaliatory Justification*

While Plaintiff's retaliation claim fails at step one of the *McDonnell Douglas* framework

for failure to establish the *prima facie* case, the Court proceeds to steps two and three in the interest

of completeness.  At oral argument, Defendant offered that Plaintiff was removed from paid

administrative leave in connection with a workers' compensation dispute, which suffices to meet

its burden at step two.  *See* ECF No. 79 at 5–6.  As regards the medical clearance requirement,

Defendant also provides a satisfactory justification:  it was necessary and non-retaliatory because

Plaintiff was on a full-incapacity medical leave and Defendant "needed assurance of [Plaintiff's]

mental and physical capacity" to take the Captain exam.  ECF No. 67-1 at 12.  *See Oliver v. New

York State Police*, No. 1:15-CV-00444 (BKS/DJS), 2020 WL 1989180, at *41 (N.D.N.Y. Apr. 27,

2020) ("Concerns for officer safety constitute legitimate, nonretaliatory reasons."), *aff'd sub nom.*

*Oliver v. D'Amico*, 2024 WL 2013670 (2d Cir. May 7, 2024).

---

[9] Plaintiff's inquiries regarding the assessor panel occurred on August 27 and August 31, 2021, approximately a month before the October 1, 2021, notification of a potential change in his pay status.  Def.'s Ex. 10, ECF No. 68-1 at 82–83; *see* Pl.'s Add'l. Facts ¶ 5.  Such temporal proximity may have been sufficient to support the causal inference if Plaintiff's inquiries constituted protected activity, *see, e.g., Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 370–71 (S.D.N.Y. 1999), but as discussed above, they do not.

### 3. *Step Three: Pretext or Other Proof of Retaliation*

At step three, regarding the change in Plaintiff's paid leave status, Plaintiff's retaliation claim fails because he has not shown a causal connection between his 2018 protected activity and the 2021 change in status.  Temporal proximity is lacking between these two events.  And even if Plaintiff had made a showing of temporal proximity, that, without anything more to connect the events, would likely be insufficient for a jury to find in his favor.  *See Mule v. Dep't of Educ. of City of New York*, 797 F. Supp. 3d 9, 32 (E.D.N.Y. 2025) ("[T]emporal proximity alone may be insufficient to establish causation") (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).  Likewise, regarding the medical clearance requirement, there is an absence of evidence supporting a finding of any retaliatory motive at step three.  *See, e.g.*, *Celotex*, 477 U.S. at 322–23.  Plaintiff has not adduced any evidence showing that the requirement was retaliatory in any fashion.

Thus, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for retaliation under Title VII.

### C.  Intentional Infliction of Emotional Distress

Finally, Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

A plaintiff claiming intentional infliction of emotional distress must establish four elements:  "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe."  *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000) (internal citation omitted).  Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which

is "calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven*, 220 Conn. 225, 267 (1991) (internal quotation marks omitted).

Plaintiff's claim cannot survive summary judgment. First, there is no evidence of Defendant's recklessness or intent to cause emotional distress aside from Plaintiff's speculation. Second, Defendant's conduct is not extreme or outrageous. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . [o]nly where reasonable minds disagree does it become an issue for the jury." *Appleton*, 254 Conn. at 210 (citation omitted). In Connecticut, "an employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Miner v. Town of Cheshire*, No. 99-CV-02334 (SRU), 126 F. Supp. 2d 184, 195 (D. Conn. 2000); *Ferrante v. Capitol Reg'l Educ. Council*, No. 14-CV-00392 (VLB), 2015 WL 1445206, at *9 (D. Conn. Mar. 30, 2015) (finding that, among other things, failure to hire the plaintiff was not sufficiently extreme and outrageous to support an IIED claim). Even a plaintiff's claim that an employer once used a racial slur does not allow a plaintiff to maintain a claim for intentional infliction of emotional distress. See *Brown v. Mulcahy*, 2007 WL 2363303, at *4 (Conn. Super. Ct. July 24, 2007); *Burr v. Howell*, 2003 WL 21675848, at *5 (Conn. Super. Ct. June 25, 2003). Thus, Defendant's conduct here—requiring a medical clearance note and removing Plaintiff temporarily from paid administrative leave—cannot possibly be described as outrageous. Reasonable minds would not disagree that Defendant's conduct falls far short of "exceed[ing] all bounds usually tolerated by decent society." *Appleton*, 254 Conn. at 210.

This alone precludes a claim for intentional infliction of emotional distress, but even if this Court were to find that Defendant intentionally engaged in outrageous conduct, Plaintiff's claim

would not survive.  As to the third element, Plaintiff acknowledged during his deposition that some of his emotional distress was related to events entirely separate from his employment with Defendant and predated the allegedly outrageous behavior.  *See* ECF No. 71-1 at 116–122 (describing Plaintiff's emotional distress stemming from racial discrimination unrelated to his job in the Police Department and explaining that such distress "started even before" the 2021 promotional process).  Finally, Plaintiff has not adduced sufficient evidence to support a finding of "severe" distress.  In his deposition, Plaintiff describes feeling ostracized and discriminated against in various aspects of his life on the basis of his race.  The Court acknowledges the profound impact that discrimination and mistreatment may have, but finds there is insufficient evidence from which a reasonable jury could conclude that Plaintiff suffered severe distress.  And even if Plaintiff's distress was sufficiently severe, summary judgment is appropriate on the claim of intentional infliction of emotional distress because Plaintiff fails to establish that Defendant harbored the requisite intent, that the conduct was extreme or outrageous, or that his distress was caused by Defendant's conduct.

## IV.    CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is GRANTED in full.  The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 19th day of December, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE